IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>DERON CHEEVES and<br>REGINALD ELMORE,<br><br>    Defendants.<br>                                              / | No. CR 09-1030 CRB<br><br>**ORDER DENYING DEFENDANTS'<br>MOTION TO SEVER TRIAL** |

      Defendants Cheeves and Elmore have moved for a severance of their trials under Federal Rule of Criminal Procedure 14. They argue that their planned trial defenses are mutually exclusive, and that permitting them to be tried together carries a high risk of extreme prejudice. This Court agrees that it seems possible that the jury will be presented with mutually exclusive defenses. However, the Court does not believe that extreme prejudice will result. This is so for several reasons. First, the evidence in this case will not put the jury in a position of being forced to convict one defendant if it acquits the other. Second, Ninth Circuit authority is clear that, in the majority of cases, the trial judge can avoid or correct prejudice through the use of jury instructions and other methods. Third, Defendants fail to identify a discrete trial right that will likely be compromised by a joint trial. Supreme Court and Ninth Circuit authority hold that mutually exclusive defenses, in

and of themselves, are not sufficient to justify severance. The question is whether there is a likelihood of extreme prejudice and whether a specific right will be compromised in a joint trial. No such right has been identified here.

Because of the presumption in favor of joint trials, and the fact that the Court is confident of its ability to avoid unfair prejudice at trial through jury instructions and other means, defendants' motion to sever is hereby DENIED.

## BACKGROUND

The Government alleges that, on January 8, 2009, both Deron Cheeves and Reginald Elmore went to a funeral at a church in San Francisco. The funeral was for a member of the Eddy Rock gang, and the Government believes the defendants had allegiances of some sort to rival gangs. The Government argues that the defendants attended the funeral "to taunt [the decedent's] friends and family." Opp. at 2.

The Government's narrative continues with Elmore firing several rounds from a Tec-DC9 semi-automatic pistol toward the funeral attendees. Id. The shooter then fled, cutting through the Prince Hall public housing development. Id. A heavy-set individual, alleged by the Government to be Elmore, can be seen on a video captured by a security camera running with the gun. Dkt. #18 at 2. At some point later (a point much disputed by both defense counsel), the Government believes the gun was transferred to Cheeves. A security guard at the housing project saw a group of men running in the housing project and identified Cheeves as the individual who then threw the gun over a fence. Id.; Opp. at 2.

## DISCUSSION

Defendant Cheeves informs the Court that his defense "will be that he did not have a gun on that day, that it was Elmore who discharged the gun, ran with the gun, and then threw the weapon over the fence." Cheeves Mot. at 2. While Elmore's papers do not specifically outline his defense, his counsel at the hearing represented that he too will blame his co-defendant, focusing on the eye-witness evidence that Cheeves, not Elmore, disposed of the gun. To the extent that the defendants intend to defend themselves by arguing that their co-defendant was exclusively responsible for the offense, they do indeed articulate mutually

2

antagonistic defenses. However, they fail to establish a likelihood that either co-defendant will suffer extreme prejudice because of these antagonistic defenses.

To begin with, it is important to note an issue of semantics. Defendants claim that they offer "mutually exclusive" defenses, as opposed to merely "mutually antagonistic" defenses. While precedent relating to this issue is not a model of clarity, it does appear that courts have recognized a certain taxonomy of conflicting defenses. See generally Scott Hamilton Dewey, *Irreconcilable Differences: The Ninth Circuit's Conflicting Case Law Regarding Mutually Exclusive Defenses of Criminal Codefendants*, 8 BOALT J. CRIM. LAW 2 (2004). Some Ninth Circuit cases have explained that defenses that are merely inconsistent do not pose the risk of extreme prejudice to justify severance. See, e.g., United States v. Sherlock, 962 F.2d 1349 (9th Cir. 1989) ("Antagonism between defenses is insufficient; the defenses must be antagonistic to the point of being irreconcilable and mutually exclusive."); United States v. Ramirez, 710 F.2d 535 (9th Cir. 1983). As Ramirez explains, "[o]nly where the acceptance of one party's defense will preclude the acquittal of the other party does the existence of antagonistic defenses mandate severance."[1] Id. at 546. This point is reiterated in United States v. Tootick, 952 F.2d 1078 (9th Cir. 1991), a case heavily relied on by both defendants. Tootick outlines the issue in different words, writing that "[m]utually exclusive defenses are said to exist when acquittal of one codefendant would necessarily call for the conviction of the other." Id. at 1081.

At the hearing on this issue, the parties disagreed as to whether the defenses in this case are, in fact, mutually exclusive. Elmore and Cheeves argue that they each plan to blame the other, and if the jury believe one co-defendant's story and acquits him, that story will correspondingly require that the jury convict the other defendant. The Government, however, views the issue differently. It argues that the question of exclusivity is not simply a function of the arguments made by counsel; it is instead a combination of the facts in evidence and the arguments made based upon those facts. In this case, then, even if the

---

[1] Despite use of the word "mandate," subsequent Ninth Circuit and Supreme Court case law clarify that severance is not per se required with mutually antagonistic defenses. This will be explained more thoroughly below.

3

arguments will be mutually exclusive, the government notes that the evidence will permit a jury to acquit both defendants even if defense arguments do not.

The Government has a point. Both Elmore and Cheeves rely heavily on Tootick, and that case is instructive on this precise point. Tootick concerned a stabbing in an isolated area. Three individuals – Moses Tootick, Charles Frank, and Aaron Hart – drove to a secluded hill, where Hart was stabbed. 952 F.2d at 1081. Hart testified that Frank stabbed him. Id. at 1080. Frank testified that Tootick stabbed Hart. Id. at 1081. Tootick did not testify, but had given police a statement concerning his state of intoxication. "That statement was used to fashion a mutually exclusive defense." Id. The Ninth Circuit explained that "[b]ecause only Frank and Tootick were present when Hart was attacked, and because there was no suggestion that Hart injured himself, the jury could not acquit Tootick without disbelieving Frank. Each defense theory contradicted the other in such a way that the acquittlal of one necessitates the conviction of the other." Id.

The facts of this case are materially different. While each defense counsel plans to blame the other defendant, the facts of the case do no necessitate that the jury convict one or the other defendant. In Tootick, there was no evidence to support a conclusion that neither defendant committed the crime. There simply was nobody else there. In this case, however, the evidence will reveal that a number of other individuals were present. Indeed, the very presence of one of the defendants will likely be an issue. Elmore was not arrested until far later, and he will likely argue that he was not even there. In Tootick, however, there was no issue as to presence. Moreover, in this case if the jury disbelieves the evidence putting Elmore at the scene and acquits him, this does not make it any more likely that Cheeves possessed the gun. Because of the temporal aspect of the Government's case – it believes Elmore shot the gun and then gave it to Cheeves, who threw it over the fence – the Government relies on different evidence as to the two defendants.

This temporal aspect also undermines one typical concern in this type of case. As defendants note, Courts have noted that mutually exclusive defenses lead to each defendant facing two prosecutors - both the U.S. Attorney and the co-defendant seeking to blame his

4

counterpart. This case, however, is importantly different from the prototypical case. In Tootick, for example, the Government accused both individuals of stabbing the victim. Each defendant then accused his co-defendant of doing it. Therefore, each defendant had two lawyers in court accusing him of the same crime. On the facts of that case, one of the individuals must have done it, and 2/3 of the lawyers in court accused each defendant. That is not so here. The Government accuses Elmore of shooting the gun, and accuses Cheeves of disposing of it. The crime as to both defendants concerns possession of the same gun, but the possession is alleged to have happened at different times. Whether or not Elmore shot the gun does not necessarily make it more or less likely that Cheeves disposed of the gun. If the jury concludes that Elmore was not there, this says nothing about whether Cheeves was. Similarly, whether or not Cheeves disposed of the gun does not make it more or less likely that Elmore shot the gun. If the testimony that places Cheeves at the scene is judged by the jury to be incredible, this makes it no more likely that Elmore had the gun earlier in the transaction.

The moment Cheeves blames Elmore for disposing of the gun, the Government will disagree. After all, it does not believe Elmore disposed of the gun. And the moment Elmore blames Cheeves for shooting the gun, the Government will disagree. It alleges that Elmore did so. Therefore, when viewed through the prism of the Government's factual allegations as set forth in their papers, the Defendants will not truly be subjected to two prosecutors in the same was as in Tootick. As noted above, regardless of the arguments made by defense counsel, the facts in this case will permit a jury to acquit one defendant without convicting the other. It is not a zero sum game. If the jury believes Elmore was not at the Church, and does not find the testimony regarding Cheeves's disposal of the gun to be credible, it may conclude that neither defendant is guilty beyond a reasonable doubt. Such a conclusion was essentially foreclosed in Tootick.

All this is to say, while Cheeves and Elmore may plan to offer arguments that are mutually exclusive, the facts of the case give the jury a flexibility that was not available in Tootick. Therefore, while the categorical nature of phrase "mutually exclusive" does not on

5

its face permit the conclusion that any set of defenses could be "more mutually exclusive" than another, it is nonetheless this court's conclusion that jury in this case will not be so constrained as it was in <u>Tootick</u>, and that the risk of prejudice is therefore correspondingly lower.

Given this conclusion, <u>Tootick</u> counsels that severance is not necessary. Indeed, even in <u>Tootick</u>, the Ninth Circuit suggested that severance would not have been necessary had the trial court properly instructed the jury. 952 F.2d at 1083 (reversing the convictions because of "the number and types of prejudicial incidents that were not corrected by instructions from the court"). This Court is capable of limiting any possible prejudicial effect of this joined trial through the use of appropriate and timely jury instructions.

This conclusion is further buttressed by <u>Zafiro v. United States</u>, 506 U.S. 538 (1993). <u>Zafiro</u> rejected arguments in favor of a per se rule of severance where defendants make mutually exclusive arguments. Moreover, it held that even where prejudice occurs, "Rule 14 does not requires severance . . . ; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." <u>Id.</u> at 538-39. <u>Zafiro</u> also explained that properly joined defendants should be given severed trials "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." <u>Id.</u> at 539. This Court explained above why, given the facts of this case, the jury will still be capable of making a reliable judgment about guilt or innocence. It also bears noting that neither defendant identifies a particular trial right that will likely be compromised. <u>Zafiro</u> provides a list of factors as indicators of potential prejudice, and none is present in this case. For example, defense counsel do not identify evidence that will be admissible as to one defendant but inadmissible as to another, do not identify exculpatory evidence that will be unavailable in a joint trial but available in a severed one, and do not face a case where defendants may have differing levels of culpability in the same crime. While <u>Zafiro</u>'s list is not exclusive, defendants do not identify any other specific trial right that is likely to be compromised.

6

Counsel for Elmore does argue that introduction of gang evidence related to Cheeves will impermissibly prejudice Elmore. However, this argument fails to articulate precisely how this will compromise Elmore's rights or confuse the jury. Elmore cites to <u>Kennedy v. Lockyer</u>, 379 F.3d 1041, 1055 (9th Cir. 2004), for the proposition that "evidence relating to gang involvement will almost always be prejudicial and will constitute reversible error." First, this suggests that such evidence is impermissible, and therefore will not be admitted. Evidence that is not admitted will not prejudice either defendant. Second, even if the evidence is admitted, and even assuming that the admission is prejudicial, this may establish prejudice as to Cheeves, but not as to Elmore. <u>Lockyer</u> concerns the prejudice that may impact a defendant when evidence relating to <u>that same defendant's</u> gang affiliation is admitted. It says nothing about how a defendant is prejudiced when a <u>co-defendant's</u> gang membership is argued to the jury. And as noted above, if indeed the evidence is inadmissible, it will not be admitted and will not cause prejudice.

## CONCLUSION

For the reasons explained above, Defendants' motion to sever is DENIED.

**IT IS SO ORDERED.**

Dated: March 29, 2010

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE

7